UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

COLLEEN L. CARBERY,

                          Plaintiff,

v.                                                          5:04-CV-0482
                                                            (GHL)

SOCIAL SECURITY ADMINISTRATION,

                          Defendant.
_____

APPEARANCES:                                OF COUNSEL:

OOT & ASSOCIATES, PLLC                      NEAL P. MCCURN, JR., ESQ.
*Counsel for Plaintiff*
503 East Washington Street
Syracuse, New York 13202

HON. GLENN T. SUDDABY                       WILLIAM H. PEASE, ESQ.
United States Attorney for the              Assistant United States Attorney
  Northern District of New York
*Counsel for Defendant*
P.O. Box 7198
100 South Clinton Street
Syracuse, New York 13261-7198

GEORGE H. LOWE, United States Magistrate Judge

### MEMORANDUM-DECISION AND ORDER[1]

## I.      BACKGROUND

### A.      Procedural History

Plaintiff filed an application for disability insurance benefits ("DIB") on June 12, 2002.

(Administrative Transcript ("T") at 31-33.)  The application was denied initially on July 25, 2002.

---

[1] The parties consented voluntarily to the exercise of jurisdiction by a United States Magistrate Judge.  Dkt.
No. 10.  The matter was referred to the undersigned on January 9, 2007.  *Id.*

(T. at 23-27.)  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") which was held on August 22, 2003.  (T. at 254-276.)  On September 23, 2003, ALJ Sy Rayner issued a decision finding that Plaintiff was not disabled.  (T. at 8-17.)

Plaintiff appealed to the Appeals Council, and the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on March 4, 2004.  (T. at 2-4.)  Plaintiff commenced this action on May 3, 2004.  (Dkt. No. 1.)

**B.**     **The Contentions**

Plaintiff's brief[2] sets forth the following claims:

(1)  The ALJ erred in issuing a decision that is ambiguous, inconsistent, and self-contradictory.  (Dkt. No. 7 at 3.)

(2)  The ALJ erred in determining Plaintiff's residual functional capacity.  (Dkt. No. 7 at 5.)

(3)  The ALJ erred in finding that Plaintiff's subjective complaints were not fully credible. (Dkt. No. 7 at 6.)

(4)  The ALJ erred in failing to develop the record with regard to Plaintiff's past relevant work.  (Dkt. No. 7 at 7.)

(5)  The ALJ erred in failing to consult a vocational expert.  (Dkt. No. 7 at 7-8.)

(6)  The ALJ erred in finding that Plaintiff could perform work on a sustained basis.  (Dkt. No. 7 at 8.)

---

[2]  Plaintiff's counsel is reminded that Northern District of New York General Order Number 18 requires that briefs in Social Security appeals contain, *inter alia*, "[a] statement of the issues presented for review, set forth in separate numbered paragraphs" and that "[t]he argument shall be divided into sections separately treating each issue and must set forth the contentions of plaintiff with respect to the issues presented and reasons therefor."  General Order Number 18 (1)(a), (c) (N.D.N.Y. Sept. 12, 2003).  Here, Plaintiff's statement of the issues presented for review is not set forth in separate numbered paragraphs.  Moreover, Plaintiff's argument is not divided into sections separately treating each issue.

Defendant disagrees, and argues that the decision should be affirmed.  (Dkt. No. 8 at 25.)

## II.    APPLICABLE LAW

### A.    Standard for Benefits

To be considered disabled, a plaintiff seeking DIB or supplemental security income ("SSI")

benefits must establish that he is "unable to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than twelve

months."  42 U.S.C. § 1382c(a)(3)(A) (2004).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience, engage
> in any other kind of substantial gainful work which exists in the
> national economy, regardless of whether such work exists in the
> immediate area in which he lives, or whether a specific job vacancy
> exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B) (2004).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. §§ 405(a), 1383(d)(1)),

the Social Security Administration ("SSA") has promulgated regulations establishing a five-step

sequential evaluation process to determine disability.  20 C.F.R. § 404.1520 (2007).  "If at any step a

finding of disability or nondisability can be made, the SSA will not review the claim further."

*Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

> At the first step, the agency will find non-disability unless the
> claimant shows that he is not working at a "substantial gainful
> activity."  [20 C.F.R.] §§ 404.1520(b), 416.920(b).  At step two, the
> SSA will find non-disability unless the claimant shows that he has a
> "severe impairment," defined as "any impairment or combination of
> impairments which significantly limits [the claimant's] physical or
> mental ability to do basic work activities."  [20 C.F.R.] §§

-3-

404.1520(c), 416.920(c).  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies.  [20 C.F.R. §§] 404.1520(d), 416.920(d).  If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled.[1] If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.[1]  [20 C.F.R.] §§ 404.1520(f), 404.1560(c), 416.920(f), 416.9630(c).

*Barnhart v. Thomas*, 540 U.S. at 24-25 (footnotes omitted).

The plaintiff-claimant bears the burden of proof regarding the first four steps.  *Serrano v. Barnhart*, Civ. No. 02-6372, 2003 WL 22683342, at *11 (S.D.N.Y. Nov. 14, 2003).  If the plaintiff-claimant meets his or her burden of proof on all four steps, the burden then shifts to the defendant-Commissioner to prove that the plaintiff-claimant is capable of performing other jobs which exist in significant numbers in the national economy.  *Id.* (citing *Barnhart v. Thomas*, 540 U.S. at 25; other citations omitted).

**B.     Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision.  *Brown v. Barnhart*, Civ. No. 02-4523, 2003 WL 1888727, at *4 (S.D.N.Y. Apr. 15, 2003); *Serrano v. Barnhart*, 2003 WL 22683342, at *10; *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the

-4-

decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986. In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2005); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Serrano*, 2003 WL 22683342, at *10; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258. However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## III.   THE PLAINTIFF

Plaintiff was born on June 24, 1950. (T. at 31.) She completed one year of college.[3] (T. at

---

[3] Plaintiff completed courses at "SUNY Ag & Tech College," Syracuse University, and LeMoyne College. (T. at 46.)

56.)  Plaintiff last worked as a receptionist and switchboard operator for an engineering firm.  (T. at 47, 258.)  She previously worked as a marketing assistant, secretary, office manager, service dispatcher, and insurance coordinator.  (T. at 45, 47.)  Plaintiff alleges disability due to "chronic neck pain following two cervical surgeries for herniated disks."  (T. at 44.)

## IV.     THE ALJ'S DECISION

The ALJ found that: (1) Plaintiff had not engaged in any substantial gainful activity since the alleged onset date of August 10, 2000 (T. at 16); (2) Plaintiff had "severe status post discectomy and fusion at C4-5, post cervical syndrome, migraine headaches and depression," but that none, singly or in combination, met or equaled a listed impairment (*Id.*); (3) Plaintiff retained the residual functional capacity to perform light work or sedentary work that is not highly stressful (*Id.*);[4] (4) Plaintiff could perform her past relevant work as a clerical worker and secretary.  (*Id.*)  Thus, the ALJ concluded that Plaintiff was not disabled.  (T. at 17.)

## V.     DISCUSSION

### A.     The ALJ Erred in Issuing A Decision that Is Ambiguous, Inconsistent, and Self-Contradictory

Plaintiff argues that the ALJ's decision is ambiguous, inconsistent, and self-contradictory because the ALJ set forth two different findings as to Plaintiff's residual functional capacity ("RFC").  (Dkt. No. 7 at 3, 5-6, 9.)  Plaintiff correctly points out that the ALJ stated in the body of his decision that Plaintiff could perform *light* work that is not highly stressful,[5] but then in the

---

[4]  As discussed in this decision, the ALJ set forth contradictory findings when he stated that Plaintiff could perform light work, and later in the decision stated that Plaintiff could perform sedentary work.  (*See infra* Part V.A.)

[5]  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm

(continued...)

"Findings" section at the end of the decision, the ALJ stated that Plaintiff could perform *sedentary* work that is not highly stressful.[6]  (T. at 15, 16.)  Defendant argues that the two statements are not inconsistent because if an individual can perform light work, they can also perform sedentary work; the ALJ defined the term "light work" and stated twice that Plaintiff could perform light work; and even if Plaintiff was limited to sedentary work, the claim is moot because her past relevant work was sedentary.  (Dkt. No. 8 at 22-23.)

Defendant correctly notes that the regulations provide that if an individual can perform light work they can also perform sedentary work.  *See* 20 C.F.R. § 404.1567(b) (2007).  Defendant also correctly notes that the ALJ defined the term "light work" and stated twice that Plaintiff could perform light work.  (Dkt. No. 8 at 22-23.)  However, the Court notes that the ALJ also stated that Plaintiff's past relevant work was "sedentary, clerical and secretarial" and then determined that Plaintiff could return to her past relevant work.  (T. at 15-16.)  Therefore, it is unclear whether the ALJ intended to find that Plaintiff could perform light or sedentary work.  In any event, the Court declines to speculate as to the ALJ's finding.  Therefore, the Court remands to allow the Commissioner to clarify this material ambiguity.  *See Brown v. Comm'r of Soc. Sec.*, 245 F.Supp.2d 1175, 1185 (D. Kan. 2003) (remanding where ALJ provided inconsistent findings as to the exertional

---

[5](...continued)
or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. § 404.1567(b) (2007).

[6]  "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(a) (2007).  Sedentary work generally involves up to two hours of standing or walking and six hours of sitting in an eight-hour workday.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996) (citation omitted).

level of work that the plaintiff could perform, and declining to leave "such an important issue to speculation"); *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974) ("It is incumbent upon the examiner to make specific findings - the court may not speculate as to his findings.") (citing *Williams v. Celebrezze*, 359 F.2d 950 (4th Cir. 1966)).

### B.    The ALJ Erred in Determining Plaintiff's Residual Functional Capacity

A claimant's RFC represents a finding of the range of tasks he or she is capable of performing notwithstanding the impairments at issue. 20 C.F.R. § 404.1545(a) (2007). An RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomatology, including pain, and other limitations which could interfere with work activities on a regular and continuing basis. *Id.*; *Martone v. Apfel*, 70 F.Supp.2d 145, 150 (N.D.N.Y. 1999) (Hurd, D.J.).

To properly ascertain a claimant's RFC, an ALJ must assess a claimant's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push and pull. 20 C.F.R. § 404.1569a (2007). Non-exertional limitations or impairments, including impairments which result in postural and manipulative limitations, must also be considered. 20 C.F.R. § 404.1569a; *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e). When making an RFC determination, an ALJ must specify those functions which the claimant is capable of performing; conclusory statements concerning his or her capabilities, however, will not suffice. *Martone*, 70 F.Supp.2d at 150 (citing *Ferraris*, 728 F.2d at 587). Further, "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g. daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7 (S.S.A.). An administrative RFC finding can withstand judicial scrutiny only if there

is substantial evidence in the record to support each requirement listed in the regulations. *Martone*, 70 F.Supp.2d at 150 (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Sobolewski*, 985 F.Supp. at 309-10.

In this case, the ALJ provided the following explanation for the RFC determination:

> [T]he medical evidence from the claimant's treating and examining physicians, as well as the Administration's consultant physicians, does not show that any of the claimant's conditions impose more than slight exertional limitations. There simply is no medical evidence demonstrating prolonged, significant functional restrictions.
>
> Furthermore, the assessment of physical capacities offered by the State Agency medical consultants (Exhibits 16F and 17[F]) are consistent with the medical evidence and compatible with the performance of light work. While not examining physicians, the State Agency medical consultants are highly qualified experts in the evaluation of the medical issues in disability claims, and their opinions are entitled to significant weight. 20 C.F.R. [§] 404.1527(f), and Social Security Ruling 96-6p. *Based upon the assessment of physical capacities as offered by these analysts, as well as the overall record,* the [ALJ] finds that the claimant retains the [RFC] to perform light work.

(T. at 15 (emphasis added.))

### 1.     Opinions of Non-Examining or Non-Treating Sources

Plaintiff argues that the ALJ erred in determining her RFC because the ALJ adopted the opinions of non-examining or non-treating sources and in so doing, "relied upon only a small portion of the medical evidence."[7]  (Dkt. No. 7 at 5.)  Defendant argues that the ALJ's decision is supported by diagnostic studies, clinical examination findings, and Plaintiff's own statements;[8] and that

---

[7]  Plaintiff does not identify to which non-examining or non-treating sources she refers.

[8]  Defendant does not identify which studies, findings, and statements support the ALJ's decision.

Plaintiff fails to cite to any medical opinion showing an inability to work.  (Dkt. No. 8 at 21-22.)

Defendant also argues that "an ALJ may rely on the absence of findings by a physician with regard to

functional limitations."  (*Id.* at 22.)

With regard to the opinions of non-examining sources, the ALJ stated that he gave

"significant weight" to the opinions rendered by the non-examining sources, C. Richard Nobel,

Psy.D. and "L. Goodman."[9]  (T. at 15.)  Dr. Nobel completed a Psychiatric Review Technique Form

and "L. Goodman" completed a Physical RFC Assessment.  (T. at 180-201.)  The ALJ later stated

that he based his RFC determination on "the assessment of physical capacities as offered by these

analysts . . ."  (*Id.*)  However, only one of these two non-examining sources offered an opinion as to

Plaintiff's physical capacities, which was "L. Goodman" who completed the Physical RFC

Assessment.[10]  Therefore, it appears that the ALJ relied on this Assessment in making his RFC

determination.[11]  (T. at 194-201.)

"State agency physicians are qualified as experts in the evaluation of medical issues in

disability claims.  As such their opinions may constitute substantial evidence if they are consistent

with the record as a whole."  *See Leach ex rel. Murray v. Barnhart,* No. 02 Civ. 3561, 2004 WL

---

[9]  The ALJ did not refer to these individuals by name; instead he referred generically to the "State [a]gency medical consultants" and cited to "Exhibits 16F and 17[F]."  (T. at 15.)  These exhibits correspond to a Psychiatric Review Technique Form completed by C. Richard Nobel, Psy.D. and a Physical RFC Assessment Form completed by "L. Goodman."  (*See* T. at 180-201.)

[10]  It appears that the ALJ did not base his RFC determination on the Psychiatric Review Technique Form because the Form is an assessment of "an individual's limitations and restrictions from a *mental* impairment(s) . . ." SSR 96-8p, 1996 WL 374184, at *4 (emphasis added).

[11]  The Assessment indicates that Plaintiff was limited to occasionally lifting and/or carrying up to twenty pounds; frequently lifting and/or carrying up to ten pounds; and standing, walking, or sitting about six hours in an eight-hour workday.  (T. at 194-201.)  It was also indicated that Plaintiff had "occasional" postural limitations, which included climbing, balancing, stopping, kneeling, crouching, and crawling.  (T. at 196.)

99935, at *9 (S.D.N.Y. Jan. 22, 2004) (citing 20 C.F.R. § 416.927(f);[12] *Mongeur v. Heckler,* 722 F.2d 1033, 1039 (2d Cir.1983)).  Thus, in this case, if the Assessment was completed by a State agency physician and is consistent with the record as a whole, then it may constitute substantial evidence.  However, the qualifications and identity of the individual who completed the Assessment are unknown.  Moreover, the preprinted phrase "Medical Consultant's Signature" on the signature line of the Assessment is crossed out, which suggests that L. Goodman is not a medical consultant. Therefore, the Court is unable to conclude that this Assessment constitutes substantial evidence.

With regard to non-treating sources, Plaintiff was consultatively examined by Berton Shayevitz, M.D. and Dennis M. Noia, Ph.D., who conducted an orthopedic examination and a psychiatric examination, respectively.  (T. at 170-178.)  Ordinarily, "a consulting physician's opinion or report should be given limited weight." *Providence v. Barnhart*, No. 02 Civ. 9208, 2003 WL 22077445, at *8 (S.D.N.Y. Sept. 5, 2003) (quoting *Cruz,* 912 F.2d 8, 13 (2d Cir. 1990)).  In contrast to the sustained treatment record of a treating physician, consultative exams "at best, only give a glimpse of the claimant on a single day." *Id.* (quoting *Cruz*, 912 F.2d at 13).  But, the opinions of State agency physicians may constitute substantial evidence if they are consistent with the record as a whole.  *See Leach,* 2004 WL 99935, at *9 (citations omitted).  While "[a]dministrative law judges . . . are not bound by findings made by State agency or other program physicians and psychologists, . . . they may not ignore these opinions and *must explain the weight given to the opinions in their decisions*." SSR 96-6p, 1996 WL 362203, at *2 (S.S.A.) (emphasis added).

In this case, the ALJ discussed the findings made by Drs. Shayevitz and Noia.  (T. at 14-15.) However, he failed to explain the weight given to their opinions.  Thus, the extent to which the ALJ

---

[12]  This section is the identical counterpart to 20 C.F.R. § 404.1527(f).

relied on these opinions is unclear.

To the extent that the ALJ relied on the opinion of Dr. Shayevitz, the Court notes that the ALJ's discussion of Dr. Shayevitz findings contained inaccuracies.  For instance, the ALJ stated that Dr. Shayevitz "*found light work* with some limitations in flexion, extension, rotation and lateral flexion producing moderate limitation of pain in the neck radiating down the non-dominant, left arm."  (T. at 15 (emphasis added.))  However, Dr. Shayevitz did not render any opinion as to the level of work that Plaintiff could perform.  (*See* T. at 174-178.)  The ALJ also failed to note that Dr. Shayevitz specified that Plaintiff was "moderately limited . . . *in terms of left arm function . . . and any activities involving the neck motion.*"  (T. at 177 (emphasis added.))

To the extent that the ALJ relied on the opinion of Dr. Noia, the Court also finds that the ALJ's discussion of Dr. Noia's findings contained inaccuracies.  For instance, the ALJ stated that Dr. Noia found that Plaintiff "could deal with complex chores."  (T. at 15.)  However, Dr. Noia found that Plaintiff "appears to be capable of performing . . . *some* complex tasks."  (T. at 173 (emphasis added.))  In addition, the ALJ stated that Plaintiff "has not been hospitalized at any time for her psychological ailments, nor has she sought any treatment or been prescribed medication to control symptoms."[13]  (T. at 15.)  In contrast, Dr. Noia noted that Plaintiff reported "that she has a history of psychiatric hospitalizations" and that Plaintiff received weekly psychiatric treatment in the past.  (T. at 170.)  Dr. Noia also noted that Plaintiff's current medications included two antidepressants, specifically Wellbutrin and Amitriptyline.[14]  (T. at 171.)

---

[13]  As discussed later, the Court finds that the ALJ set forth contradictory and inaccurate findings as to the treatment Plaintiff received for her mental condition.  (*See* Part V.B.2.)

[14]  Wellbutrin is "given to help relieve certain kinds of major depression."  *The PDR Pocket Guide to Prescription Drugs* 1361  (3rd ed. 1999) (revised).  Amitriptyline, also known as Elavil, is prescribed for the relief

(continued...)

In light of the above findings, the Court finds that remand is required.  The Court is unable to conclude that the ALJ's reliance on the Physical RFC Assessment constitutes substantial evidence because it was completed by an unknown individual.  Moreover, the Court is unable to conclude that the ALJ's reliance, if any, on the opinions rendered by the consultative examiners constituted substantial evidence.  The ALJ failed to explain the weight given to their opinions and his discussion of their findings contained inaccuracies.  Therefore, upon remand, the ALJ must explain the weight given to the opinions rendered by any State agency or other program physicians and psychologists.

### 2.     The ALJ's Discussion of Supporting Evidence

In addition to basing his decision on the "assessment of physical capacities," the ALJ stated that he based his determination on "the overall record."  (T. at 15.)  The ALJ then discussed the frequency of Plaintiff's visits to her neurosurgeon, David Y. Eng, M.D., Ph.D., visits to the New York Pain Center, and the treatment Plaintiff received for her mental condition.  (T. at 15.)  However, this discussion contained inaccuracies and was contradictory.

For instance, the ALJ stated that Plaintiff saw Dr. Eng "a few days ago" and that "[p]rior visits were three months ago and one year ago."  (T. at 15.)  However, the last visit documented in the record is not dated "three months ago," but is dated February 25, 2002, which is more than one year before the ALJ rendered his decision.  (T. at 109.)  Moreover, Plaintiff testified that prior to her most recent visit to Dr. Eng, which was on "Monday of this week," she saw him one year ago.  (T. at 264, 265.)

With regard to Plaintiff's most recent visit to Dr. Eng, Plaintiff testified that she last saw Dr.

---

[14](...continued)
of mental depression.  *Id.* at 441.

Eng on "Monday of this week."  (T. at 264.)  The ALJ asked Plaintiff, "Why did you see him, did you have records?"  (*Id.*)  She responded as follows:

> No, my physical therapist needs permission from him to put me on a home traction device and he wouldn't approve it without seeing me first, because the old home traction devices could do something with the titanium plates that he put in.  I don't now [sic] whether he would approve it yet, he wanted to see me again in three months.

(T. at 264-265.)  The foregoing testimony clarifies the purpose of Plaintiff's visit to Dr. Eng, but does not clarify if she obtained records from this visit.  The Court finds that the ALJ had an affirmative obligation to clarify this point and, if necessary, obtain any records from this visit.  *See Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999); *Foster v. Callahan*, No. 96-1858, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998) (Pooler, D.J.) (finding that "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history"); *see also* 42 U.S.C. § 423(d)(5)(B); 20 C.F.R. § 404.1512(d), (e) (2007); *Baize v. Barnhart*, No. CV-02-3654, 2003 WL 23303419, at *9 (E.D.N.Y. Nov. 24, 2003) (finding that compliance with the obligation to develop a claimant's medical history "should have motivated" the ALJ to request treatment notes from chiropractor).

The ALJ's discussion of Plaintiff's treatment at the New York Pain Center also contained inaccuracies.  The ALJ stated that Plaintiff "goes to the pain clinic about every two months."  (T. at 15.)  At the hearing, the ALJ asked Plaintiff if she visited the pain clinic every two months.  (T. at 265.)  Plaintiff responded, "Yeah, sometimes 30 days depending on the - - I don't know whether it's their schedule or depending on the pain level."  (T. at 265.)  Thus, Plaintiff's testimony makes clear that at times she visits the pain clinic on a more frequent basis than found by the ALJ.

The Court further notes that the ALJ's findings regarding Plaintiff's treatment of her mental

-14-

condition are inaccurate and contradictory.  For instance, the ALJ found that "[f]or her depression she has not seen a psychiatrist or psychologist and has not taken psychotropic medications in two years."  (T. at 15.)  However, in the next paragraph in his decision, the ALJ stated that Plaintiff "has not been hospitalized *at any time* for her psychological ailments, *nor has she sought any treatment or been prescribed medication* to control symptoms . . . . [and] there is no indication of severe psychiatric symptomatology and, as noted, *she has received neither treatment nor medications for any mental/emotional difficulties*."  (*Id.* (emphasis added.))  In addition to stating contradictory findings, the ALJ's latter finding is incorrect.  At the hearing, the ALJ asked Plaintiff, "You were hospitalized in 1980 for depression, is that correct, about 1980?"  (T. at 267.)  Plaintiff responded, "Yes."  (*Id.*)  The ALJ then asked Plaintiff if she had experienced any subsequent problems with depression to which Plaintiff responded, "Yeah, a little."  (*Id.*)  The ALJ later asked her to identify the medicine with which Plaintiff controlled her depression.  (T. at 268.)  Plaintiff answered that she took Paxil in the past, but did not currently take any medications for depression.[15]  (*Id.*)  In addition to Plaintiff's testimony, consultative examiner, Dr. Noia, commented that Plaintiff reported "that she has a history of psychiatric hospitalizations" and that Plaintiff received weekly psychiatric treatment in the past.  (T. at 170.)  Dr. Noia also noted that Plaintiff's current medications included two anti-depressants.  (T. at 171.)  Accordingly, the ALJ's finding that Plaintiff had not been hospitalized or sought treatment for her mental condition is incorrect.

The Court also finds that in determining Plaintiff's RFC, the ALJ failed to detail, on a

---

[15]  Whether Plaintiff took anti-depressant medication at the time of the hearing is somewhat unclear because she testified that she did not take medication for her depression, (T. at 268), but testified earlier in the hearing that "[t]he prescription medications, the muscle relaxants *and anti-depressant*, which is what they give me at night, are drowsy -- make me drowsy."  (T. at 262 (emphasis added).)  Moreover, a list of Plaintiff's medications dated August 22, 2003, the date of the hearing, includes the antidepressant medication Amitriptyline.  (T. at 216.)

function-by-function basis, Plaintiff's specific exertional limitations.  *See Pronti v. Barnhart*, 339 F.Supp.2d 480, 490 (W.D.N.Y. 2004) (citing SSR 96-8p, 1996 WL 374184, at *1 ("The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. 404.1545 and 416.945.  Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.")).  In this case, the ALJ failed to identify Plaintiff's functional limitations or restrictions and assess her work-related abilities on a function-by-function basis.

In light of the foregoing, the Court is unable to conclude that the record provides substantial evidence for the ALJ's RFC determination because the ALJ set forth inaccurate and contradictory findings; failed to obtain any missing records from Dr. Eng; and failed to detail, on a function-by-function basis, Plaintiff's specific exertional limitations.  Accordingly, the matter must be remanded for a proper determination of Plaintiff's RFC.  Upon remand, the ALJ shall provide a narrative discussion describing how the evidence supports his RFC finding; obtain any missing documents from Dr. Eng; and detail, on a function-by-function basis, Plaintiff's specific exertional limitations.

**C.    The ALJ Erred in Finding that Plaintiff's Subjective Complaints Were Not Fully Credible**

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'"  *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, Civ. No. 96-9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)).

To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. 20 C.F.R. § 404.1529 (2007); *see also Foster*, 1998 WL 106231, at *5. First, the ALJ must determine whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce a claimant's pain or other symptoms. 20 C.F.R. § 404.1529(a); SSR 96-7p, 1996 WL 374186, at *2 (S.S.A. 1996). Second, once such an impairment is shown, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. 20 C.F.R. § 404.1529(c); SSR 96-7p, 1996 WL 374186, at *2. This requires the ALJ to make a finding about the credibility of the claimant's statements regarding the symptoms and their functional effects. SSR 96-7p, 1996 WL 374186, at *1.

In assessing the credibility of the claimant's subjective complaints, the ALJ must consider the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. § 404.1529(c)(3). An ALJ's evaluation of a plaintiff's credibility is entitled to great deference if it is supported by substantial evidence. *Murphy v. Barnhart*, Civ. No. 00-9621, 2003 WL 470572, at *10 (S.D.N.Y. Jan. 21, 2003) (citing *Bischof v. Apfel*, 65 F. Supp. 2d 140, 147 (E.D.N.Y. 1999) and *Bomeisl v. Apfel*, Civ. No. 96-9718, 1998 U.S. Dist. LEXIS 11595, at *19 (S.D.N.Y. July 30, 1998) ("Furthermore, the ALJ has discretion to evaluate a claimant's credibility . . . and such findings are entitled to deference because the ALJ had the opportunity to observe the

claimant's testimony and demeanor at the hearing.")).

Plaintiff argues that her testimony is credible and demonstrates that she is precluded from performing substantial gainful work activity.[16]   (Dkt. No. 7 at 6.)  Defendant argues that the "ALJ is entitled to evaluate a claimant's credibility, and arrive at an independent judgment regarding subjective symptoms in light of the medical findings and other evidence regarding the true extent of symptoms."  (Dkt. No. 8 at 20-21.)

In his decision, the ALJ found that Plaintiff's subjective complaints were not credible.  (T. at 16.)  In coming to this conclusion, the ALJ did not discuss explicitly whether, based on the objective medical evidence, Plaintiff's impairments could not reasonably be expected to produce the pain or other symptoms alleged.  As such, the first step of the two-step analysis of the evidence in the record, required by 20 C.F.R. § 404.1529, was not met.

If the Court were to assume that the ALJ met the first step of the two-step analysis, then the ALJ would have had to assess the credibility of Plaintiff's subjective complaints by considering the record in light of the various symptom-related factors set forth in 20 C.F.R. § 404.1529(c)(3).  In this case, the ALJ did not discuss all the relevant factors.

First, regarding Plaintiff's daily activities, while the ALJ noted various activities that Plaintiff stated she could perform, such as shopping, driving, visiting the bank, ATM, post office, and occasionally restaurants, nothing indicates that the foregoing constituted daily activities.  (*See* T. at 11, 16.)  The ALJ also noted that Plaintiff attended to personal care needs, such as bathing, feeding, and grooming.  (T. at 16.)  However, the Second Circuit has frequently rejected determinations that a

---

[16] Plaintiff offers very little legal argument on this point, and fails to cite any supporting case law or regulations.  (*See* Dkt. No. 7 at 6.)  Nevertheless, the Court will addresses the issue.

person is not disabled based on minimal activities of daily life not engaged in "for sustained periods comparable to those required to hold a sedentary job." *Sarchese*, 2002 WL 1732802, at *8 (E.D.N.Y. July 19, 2002) (quoting *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 643 (2d Cir. 1983) (other citation omitted)).  The mere fact that an individual is mobile and able to engage in some light tasks at his home does not alone establish that he is able to engage in substantial gainful activity.  *Lecler v. Barnhart*, No. 01 Civ. 8659, 2002 WL 31548600, at *7 (S.D.N.Y. Nov. 14, 2002) (quoting *Gold v. Sec. of Health, Ed. & Welfare*, 463 F.2d 38, 41 n.6 (2d Cir. 1972)).  Accordingly, the Court finds that the ALJ erroneously failed to discuss Plaintiff's daily activities.

Second, as to the location, duration, frequency, and intensity of Plaintiff's symptoms, the ALJ noted this information to some extent while reviewing the medical records.  (T. at 13-15.)  However in reviewing Plaintiff's testimony, the ALJ incorrectly found that Plaintiff "testified that she has pain in her left arm only."  (T. at 11.)  At the hearing, Plaintiff testified that she stopped working because of pain in her neck and arm, and that she still has pain in her neck, arm, and fingers of her left hand. (T. at 258, 259.)  She also stated that the pain in her neck is "always with me" and that two fingers in her left hand "are numb approximately 90 percent of the time."  (T. at 259, 260.)  Thus, the ALJ incorrectly found that Plaintiff stated that she only had pain in her left arm and wrongfully failed to discuss the foregoing testimony.

Third, regarding any precipitating and aggravating factors, while the ALJ noted that Dr. Eng reported that Plaintiff had "predominant neck discomfort especially with flexion," (T. at 13), the ALJ failed to noted that Plaintiff also reported this complaint to the New York Pain Center, which is where she received treatment, and also to consultative examiner Dr. Shayevitz.  (T. at 167, 168,

174.)  The ALJ also failed to note that Plaintiff testified that the pain in her neck worsens when she bends her head "forward and down as if . . . doing work on a table or a desk."  (T. at 259.)  Plaintiff also stated that the pain worsened when she lifted "anything over two or three pounds," as well as "[d]oing anything above my shoulder height, trying to reach."  (T. at 259-260.)  She then added that she is unable to work at a computer for more than "one or two minutes" because she experiences "very uncomfortable pains in the neck and shoulders."  (T. at 261.)  She further stated that the pain restricts her ability to sit for long periods of time and that after "about 20 [to] 25 minutes," she becomes "very uncomfortable and [has] to get up and move around."  (T. at 261, 275.)  She also claimed that the pain limited her to fifteen to twenty minutes of standing.  (T. at 261.)  Thus, the ALJ erroneously failed to discuss the foregoing aggravating factors.

Fourth, regarding the type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms, at the hearing Plaintiff testified that she takes medication to sleep, "otherwise the pain wakes me up many times during the night."  (T. at 262.)  The ALJ then asked Plaintiff if she took any medications for pain during the day.  (T. at 262.)  Plaintiff responded, "I try not to because the pain medication that I have is addicting, so I - - unless it gets up to the high level and stays there for several days, I don't take the oxy-IR[17] unless I just take Advil or Tylenol, Extra Strength Tylenol."  (T. at 262.)  The ALJ then asked Plaintiff if she experienced any side effects from the medications to which Plaintiff stated that "[t]he prescription medications, the muscle relaxants and anti-depressant,[18] which is what they give me at night, are drowsy - - they make me drowsy."  (*Id.*)

---

[17]  Oxy-IR is oxycodone hydrochloride and is indicated for the relief of moderate to moderately severe pain.  *Physicians' Desk Reference* 2822-2823 (59th ed. 2005).

[18]  As noted, it is unclear whether Plaintiff took anti-depressant medication at the time of the hearing.  (*See supra* p. 15, n. 15.)

Plaintiff also stated that she took medications for her thyroid, arthritis, and migraine headaches. (T. at 266.) The ALJ erroneously failed to discuss the foregoing medications and side effects.

Fifth, regarding any other treatment received to relieve Plaintiff's symptoms, the ALJ noted that Plaintiff had surgery performed on her back in April 2000 and March 2001. (T. at 15.) However, the ALJ erroneously failed to discuss that Plaintiff testified to having a series of unsuccessful epidural injections, and that she attends physical therapy twice a week. (T. at 243, 260, 264, 274.)

Sixth, regarding any measures taken to relieve symptoms, Plaintiff testified that in order to relieve her pain, she lies down on the floor "a couple [of] times a day" for one hour each time. (T. at 260.) She also stated that in accordance with medical advice, she walks "close to three miles" each night, and performs stretching and strengthening exercises for her hands and wrists. (T. at 261.) She also stated that she wears a soft neck collar when traveling. (T. at 274.) The ALJ erroneously failed to discuss the foregoing measures taken by Plaintiff to relieve symptoms.

Accordingly, even if this Court were to assume that the ALJ met the first step of the credibility assessment analysis, the second step was not met, as the ALJ did not discuss all of the symptom-related factors set forth in 20 C.F.R. § 404.1529(c)(3). Therefore, the Court remands for the proper evaluation of Plaintiff's subjective complaints of pain.

**D.     The ALJ Erred in Failing to Develop The Record With Regard to Plaintiff's Past Relevant Work**

"[I]n order to determine at step four whether a claimant is able to perform her past work, the ALJ must make a specific and substantial inquiry into the relevant physical and mental demands associated with the claimant's past work, and compare these demands to the claimant's residual

capabilities." *Kerulo v. Apfel*, No. 98 Civ. 7315, 1999 WL 813350, at *8 (S.D.N.Y. Oct. 7, 1999)

(citations omitted); *see also* SSR 82-61, 1982 WL 31387 (S.S.A. 1982); SSR 82-62, 1982 WL 31386

(S.S.A. 1982).  Once the demands of the claimant's past relevant work are ascertained, the ALJ must

identify the claimant's ability to perform the specific work-related abilities on a function-by-function

basis.  SSR 96-8p, 1996 WL 374184, at *1.  Similarly, as provided in SSR 82-62:

> In finding that an individual has the capacity to perform a past
> relevant job, the determination or decision must contain among the
> findings the following specific findings of fact:
>
> 1. A finding of fact as to the individual's RFC.
>
> 2. A finding of fact as to the physical and mental demands of the
> past job/occupation.
>
> 3. A finding of fact that the individual's RFC would permit a return
> to his or her past job or occupation.

SSR 82-62, 1982 WL 31386, at *4.  Moreover, "[t]he claimant is the primary source for vocational

documentation, and statements by the claimant regarding past work are generally sufficient for

determining skill level[,] exertional demands and nonexertional demands of such work." *Id.* at *3.

Plaintiff argues that the ALJ failed to develop the record regarding her past relevant work

because he failed to determine the full physical and mental demands required by her past relevant

work.  (Dkt. No. 7 at 7.)  Defendant argues that the ALJ properly determined that Plaintiff could

return to her past relevant work.  (Dkt. No. 8 at 23.)

The ALJ found that Plaintiff's past relevant work was "sedentary, clerical and secretarial."

(T. at 15.)  The ALJ later added that Plaintiff "retains the ability to perform her past relevant work as

a clerical worker and secretary.  These were not complex business arrangements and were not unduly

demanding from a physical or mental perspective."  (T. at 16.)

At the hearing, the ALJ asked Plaintiff if she had worked since her alleged onset date.  (T. at 257.)  Plaintiff responded that she tried to work for "a couple of months" in between the first and second neck surgeries.[19]  (T. at 257-258.)  She described the work as follows: "Receptionist, switchboard, working with computers and fax machines, typewriters."  (T. at 258.)  The ALJ did not ask any questions regarding the physical and mental demands associated with this position.

As the hearing testimony illustrates, the ALJ made no inquiry into the relevant physical and mental demands associated with Plaintiff's past relevant work.  The ALJ therefore was unable to compare these demands to the claimant's residual capabilities.  The ALJ's conclusory findings, although they may be supported by evidence in the record, do not meet the requisite standards for findings of fact at this stage of the disability evaluation.

Based on the foregoing, the Court is unable to conclude that the record provides substantial evidence to support the ALJ's finding that Plaintiff is capable of returning to her past relevant work.  Therefore, remand is appropriate.  Once the demands of Plaintiff's past relevant work are ascertained, the ALJ must identify Plaintiff's ability to perform the specific work-related abilities on a function-by-function basis.

> **E.**     **The ALJ Erred in Failing to Consult a Vocational Expert**

Plaintiff argues that the ALJ erred in failing to elicit the opinion of a vocational expert because her ability to perform a full range of work is limited.  (Dkt. No. 7 at 8.)  Defendant

---

[19]  At the hearing, Plaintiff later added that her attempt to return to work occurred before her onset date.  (T. at 262-263.)

apparently argues that a vocational expert was not necessary because Plaintiff's nonexertional limitations did not present significant limitations.  (Dkt. No. 8 at 24.)

Because the Court is remanding to allow the ALJ to reevaluate Plaintiff's RFC, credibility, and ability to return to her past relevant work, the Court directs remand on this issue as well.  Upon remand, the ALJ shall obtain the opinion of a vocational expert if Plaintiff's nonexertional limitations present significant limitations.  *See Bapp v. Bowen*, 802 F.2d 601, 605-06 (2d Cir. 1986) (holding that if a claimant's nonexertional impairments "significantly limit the range of work permitted by his exertional limitations" the application of the grids is inappropriate).

### F.    The ALJ Erred in Finding that Plaintiff Could Perform Work on a Sustained Basis

Plaintiff argues that the ALJ erred in finding that she could perform work on a sustained basis because she must lie down "a couple of times" a day for one hour each time.  (Dkt. No. 7 at 8.) Defendant apparently argues that the burden of proving that Plaintiff could perform work on a sustained basis never shifted to the Commissioner because this matter did not proceed to step five of the sequential evaluation.  (Dkt. No. 8 at 24-25.)

In this case, as discussed, remand is required for, *inter alia*, a reevaluation of Plaintiff's RFC. (*See supra* Part V.B.)  Upon remand, the ALJ must discuss why Plaintiff's symptom-related functional limitations and restrictions, including her alleged need to lie down, can or cannot reasonably be accepted as consistent with the medical and other evidence.  *See* SSR 96-8p, 1996 WL 374184, at *7 ("The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence."); *Crespo v. Apfel*, No. 97 CIV 4777, 1999 WL 144483, at *6 (S.D.N.Y.

Mar. 17, 1999) (referring to the plaintiff's recurring need to lie down as a functional limitation).

To the extent that Plaintiff is claiming that the ALJ failed to consider her subjective complaint regarding the need to lie down, the Court has already addressed the ALJ's failure to assess properly the credibility of Plaintiff's subjective complaints.  (*See supra* Part V.C.)  The Court reiterates that upon remand, the ALJ shall properly evaluate Plaintiff's subjective complaints, including her alleged need to lie down.

**WHEREFORE**, for the reasons set forth above, it is hereby

**ORDERED**, that the decision denying disability benefits be **REVERSED** and this matter be **REMANDED** to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g)[20] for further proceedings consistent with the above.

**IT IS SO ORDERED.**

Dated:  March 28, 2007
      Syracuse, New York

George H. Lowe
United States Magistrate Judge

---

[20] Sentence four reads "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g) (2006).